4-25-0795, People of the State of Illinois v. Jimmy L. Wallace. Counsel for the appellant, please state your name for the record. Nicholas O'Connor. Thank you. Counsel for the appellate, could you please state your name for the record? My first name is Allison Page. My last name is Brooks and I appear on behalf of the people. Thank you, counsel. Counsel for the appellant, you may proceed. Good morning, your honors, counsel, and may it please the court. My name is Nick O'Connor from the Office of the Appellate Defender, appearing on behalf of Jimmy Wallace. In our opening brief, we raise three main issues. However, regarding arguments two and three, we rest on the issues on the arguments set forth in our opening brief, unless this court has any questions. Turning to the suppression issue, your honors, the purpose of an inventory search is to protect the property of the owner of the car and insulate the police department from liability in case that property is lost or damaged. The purpose is not to create a workaround for police officers to enter the vehicle and search passengers' belongings. However, when officers change over time. I'm sorry, your honor. In a encounter, can the purpose of the search change as the encounter proceeds? The purpose of an inventory search does not change. That's not my question. This is so much easier if you just answer the question. Your honor, if the purpose of a search, can the purpose of a search change over time as an incident proceeds? Yes, your honor, it can. That's the, okay. Wasn't that easy? Go ahead. In this case, when Officer Bucko followed Mr. Wallace, tailed the car, and ultimately searched the vehicle under the guise of an inventory search, it turned into precisely such a Fourth Amendment workaround. Your honors, the purpose, the cannot be defined at the discretion of a law enforcement officer. While there's not an Illinois case law on point for this issue, there are several out-of-state cases that are on point. Well, before you get to those, counsel, I'd like to ask you in regards to the inventory search conducted here. An inventory search requires three factors be satisfied. The Hundley factors, correct? Yes. Which, if any, of those three factors are you saying were not satisfied here? Your honor, it's the second and third Hundley factors were not satisfied here. Namely, that the search has to be aimed at protecting the property and in accordance with police procedures. Okay. When I read through your brief, it seemed like the approach you had taken is that these factors, the factors two and three, you're saying that they were not satisfied from a retrospective standpoint. I want you to tell us at the time that the search is being conducted, and just prior to the search, actually, let me back up. Just prior to the search being conducted, isn't that the point in time in which the court is to look to the three Hundley factors to determine whether or not an inventory search would be proper? Your honor, to determine whether the inventory search would be proper would be to look before the search was done. But to determine if it was done thoroughly to protect the property and in accordance with police procedures, you would have to look at what transpired during the search. The inventory search here, though, as Justice DeArmond alluded to here, wasn't completed because the officers at the very inception of the inventory search found a glass jar with white residue on it, thus providing probable cause to conduct a search of the vehicle, correct? Yes, your honor. 34 seconds into the search, they found the white jar. However long it took for them to discover that white jar. So at that point, what is the relevance of whether or not they had documented items that they found which would be done at the conclusion of an inventory search? What's the relevance of that to this case where there was a transition from an inventory search, which was the search at its inception, that became a probable cause search when they found the glass jar with the white residue on it? Why should we be looking at whether or not they were thorough in their search of the compartment between the two seats? What does it matter? No one testified that the inventory search had been completed at the time of the discovery of the glass jar, correct? Correct, your honor. As to the relevance of as to why it matters, is that the inventory search was invalid from the very beginning. If on the body cam footage from Officer Bakari, the search that takes place after the discovery of the methamphetamine and the search that took place prior to it are identical. So you say that the inventory search was invalid at its inception. At its inception is when the three Hundley factors are examined and it's determined whether or not an inventory search would be proper, correct? Correct. Okay, when you say that it wasn't thorough, now we're talking about what happens after the three factors have been satisfied. Now you're looking at whether or not the Pekin inventory search policy requirements have been satisfied, correct? Correct. And whether the search was designed to protect the passenger's property. But we know that the inventory search wasn't completed, correct? Yes, your honor. So how can you say that it wasn't thorough when you acknowledge that the inventory wasn't completed? It didn't need to be completed. According to the officers, it transitioned from an inventory search to a probable cause search because of the discovery of the glass jar with light residue on it. Your honor, the search at the beginning was not valid because the officer made no attempt to locate the property beyond a cursory search of the vehicle. He was not documenting the property that he was finding and he was not aiming to document... You don't have any idea whether that was something that was going to take place after they had conducted the cursory search of the vehicle. You don't quarrel, do you, with the fact that the evidence is clear that once the driver was going to be given that ticket, that a seizure of the vehicle was to take place pursuant to the Pekin Police Department policy. No, your honor. It was to be impounded. Okay. So we know, and you don't even contest, the fact that it was going to be subject to an inventory search at the very least. Yes, your honor. Okay. Well, knowing that, then we know that the search was going to be conducted for the purposes of each of the three Hundley factors, correct? Yes, your honor. Okay. So once you acknowledge that it's an inventory search and you know that it's going to be an inventory search and it's per policy, then the three Hundley factors are met, aren't they? Well, your honor, the search was to be conducted properly at the beginning of the search, but it was not completed in conduct with the police policy or to create an inventory list. If you acknowledge that it is an inventory search that is going to be conducted, how can you get around having to then acknowledge that the objectives of the search at that point in time are the three Hundley factors? Your honor, the objectives were not completed because the officer was not. Yes, that's not the question. If you acknowledge at the front end that this is a proper inventory search, in other words, that it's the search that is established by policy, that it's for the purposes of an inventory, how can you get around having to, not acknowledging that all three of the Hundley factors are met at that point in time? At the point when they enter the vehicle, your honor? It's the objectives of the inventory. Search. You agree that it's an inventory search, right? I agree that the officers entered the vehicle to conduct an inventory search. I do not agree that they conducted an inventory search within the vehicle. Counselor, it seems like you're adding a fourth Hundley factor that doesn't exist, which is that the search here, in this case, the inventory search, notwithstanding that the discovery of the glass jar with residue providing probable cause, that the inventory search itself had to continue and there had to be a list of items identified, noted. Otherwise, everything, that including what was found as a result of the probable cause search, would have to be suppressed. And there is no fourth factor here. Well, your honor, under the third factor, in accordance with police policy, if there is no judgment over how the police conduct the search in the vehicle, then essentially, once the police gain access to conduct an inventory search, there would be no grounds for judging whether or not they complied with department policy. They would simply have to get into the car and then they could do whatever they wanted within the car. The second and third factors. Well, that's not actually true. If it were just a pure inventory search, you would then look at what transpired and whether they, in fact, had complied with policy in the way they did it. Your problem here is it began as an inventory search, which you even acknowledge was an inventory search that was going to be conducted in response to standardized police procedures. The problem is it didn't finish up as an inventory search. You're basing your argument on a results-based argument that, in my humble opinion, doesn't have anything to do with the actual facts in front of us, because we have what began as an inventory search, which then blossomed into a probable cause search. Once that happens, we don't have to be concerned with these three Hundley factors, do we? Your Honor, we do need to be concerned with the Hundley factors because the first 30 seconds of the search indicate that it was never an inventory search. Once they, though they had reason to get in the car per an inventory search, given that they were towing the vehicle, once they entered the car, they did not conduct an inventory search. Okay, counsel, can I just give you a hypothetical? Let's say you have this situation. The officers determine they're going to conduct an inventory search. All three Hundley factors are satisfied. The officers, in advance of getting inside the car, they open all of the doors and they open the trunk. When they open the trunk, they see what appears to be three kilos of cocaine there. Okay, this is the fact that they did not complete the inventory of items that were in the back seat of the car, then somehow negate this probable cause search that would follow after they have observed the three kilos of cocaine in the trunk. Not in your hypothetical, Your Honor, but in your hypothetical, before they enter the car, to begin with, they recognize the drugs. However, in this case, they entered the car and conducted what was not compliant with the inventory search before they found the methamphetamine. I'm trying to figure out how you determine that it's not compliant. Was there evidence in the record that an inventory search must start in a certain way and it must follow a specific pattern? Your Honor, it comes from the body camera footage in which the officer made no effort to create such an inventory list or to inventory the items. First of all, you don't have any evidence that it has to be done in a particular sequence, do you? Well, Your Honor, the police department says that you must be thorough and create an inventory list and the video was showing that such was neither of those. Because they didn't get finished. You see, you're arguing something that doesn't even exist in the record. You're claiming that what the officer did in that first 36 seconds has to be a specific formalized procedure that there's no evidence in the record is required. Well, Your Honor, if we allow police to go through and conduct this cursory search and then later document the items, essentially we would be allowing police to go through the car as many times as they want, do a search for what they're looking for, then do the inventory search. Whereas when we're looking at the three factors, for them to create that inventory list, we cannot be allowing police to be going through the car as many times as they please to create this inventory list to really be conducting a search of the vehicle that they're seeking. Counsel, I think you're going to maybe run up against your time here and I know that you have another issue you want to get to. Yes, Your Honor. In terms of the ordering of Wallace to leave his bag in the car, as the court in Boyd explained, the key analysis in this case is where the bag was when probable cause was discovered and developed to search the vehicle. In this case, when the officer ordered Mr. Wallace to leave the bag in the car, they did not yet have probable cause to search the vehicle. Without probable cause, the officer could not order Mr. Wallace to leave the bag in the car because it was merely an inventory search and not at that point an investigatory search. Moreover, officers could likewise not make such an order to address any officer safety concern. Though there is reason to doubt the reasonableness of the officer's stated fear for their safety, even assuming for argument's sake that there were officer safety concerns, that did not give Officer Bakari Grounds to order Wallace to leave his bag inside the vehicle. So you've cited a number of out-of-state cases that all seem to follow the Justice Breyer concurrence in Houghton. You've cited Boyd out of Kansas, Newsom out of Idaho, and I believe these are all cases you've cited, and then Tognatti, however that's pronounced as Tognatti, North Dakota case, correct? Yes, your honor. And all three of those cases involved a passenger with a purse, correct? Yes, your honor. Okay, do you find, I know the state notes the distinction between what occurred in this case, which was what I believe was a backpack or a book bag or something of that sort. Do you acknowledge the distinction between the purse in those cases in which a purse was specifically described by Justice Breyer in his concurrence, and what defendant had in this case, which was a book bag? Your honor, two points. First, according to Justice Breyer's concurrence, he set forth a two-step test for determining the personal item, and that was how close it was to the person and whether they immediately exercised control over it. Both of those would be satisfied in this case. However, your honor, in this case it doesn't matter whether the bag was akin to a purse or a personal item because there was not yet probable cause to search the vehicle, where in those other out-of-state cases there was probable cause or it was a search incident to arrest. In this case, because at the point of the order it was merely an inventory search, it doesn't matter what the categorization of the backpack is. Well, stay with this discrete issue, which is you argue that it's proximity and control, correct? The distance of the item and the control the passenger exerts over the item. So if an individual has a duffel bag on his lap, that's very close. So distance is satisfied and it's on his lap, so he's controlling it. Are you saying that based on these cases that have found along the lines of the purses that that search would have been unreasonable, that the duffel bag would have fit as well? Your honor, under the two-step test, it would. However, again, in this case, I don't think a duffel bag, whether it's a duffel bag or a backpack, is dispositive considering that there was only an inventory search here and not probable cause. I know that's the second part that you're getting to and I'm wanting to stay with this. What if it's a suitcase? Somebody has a suitcase that's on their lap. You're saying that's akin to a billfold or a purse, according to Justice Breyer's concurrence? According to Justice Breyer's concurrence, yes, your honor. Okay, go ahead. As to the second issue, as to whether or not the officer could order him to take it out in an inventory search, without probable cause, there was not fear for any sort of taking of evidence because there was not evidence of a crime to be found, considering it was not probable cause or search instinct to arrest. Moreover, as to the officer safety point, the officers had numerous different routes that they could have taken to protect officer safety without ordering Mr. Wallace to leave his bag in the very place which was to be searched. For example, officers could have ordered Mr. Wallace to leave his bag in the officer's cruiser, locked away from Mr. Wallace until the inventory search was concluded. That way he couldn't reach it and officer safety would not be jeopardized. Moreover, in Meyer, a case cited by the state from Idaho, the officers actually protected officer safety by ordering the defendant to leave the bag out of his reach on the other side of the vehicle outside of the car during the search so as to protect officer safety. Each of those avenues protected officer safety without putting the bag right into the very spot that was to be searched. Would you agree with this statement from Meyer? The ostensible purpose of removing passengers from a vehicle during a traffic stop is to allow officers to monitor the passengers while also separating them from any dangerous articles potentially present in the vehicle. Allowing an occupant ordered from a vehicle to maintain possession of personal effects that could conceal weapons diminishes the safety benefit garnered by lawfully removing the occupant from the vehicle. Do you agree with that statement? Your Honor, I see that I'm out of time. May I answer the question? Please. Your Honor, first off, in Meyer, the facts were that the occupant was the sole occupant and the driver was within the car. In that case, there was a distinct issue. Moreover, in Meyer, even if we accept what the... No, counsel, I'm just simply asking whether or not you agree with that statement that I read. Yes, Your Honor, I do agree with it, and I believe that in this case, those aims could have been achieved without ordering the passenger to put the bag back into the very place that was to be searched. Okay, thank you. All right, thank you, counsel. Your time is up. You'll have an opportunity on rebuttal. Counsel for the appellate. Thank you, Your Honors. May it please the court and counsel, the standard review here is for clear error. This factual findings the trial court makes has to be against the manifest weight of the evidence. And here the trial court found that there was an objectively reasonable concern for officer safety that justified what the police ordered the defendant to do, which is to leave the bag in the car. We're not concerned with what the police might have done, else it's what the police actually did and whether officer safety actually justified what they ordered the defendant to do. And here, it's no clear error in the trial court's finding that officer safety did warrant the order to leave the bag because there are 2 a.m., they're in an industrial area, you have two occupants and two officers. The officers are occupied with tasks and the occupants are unrestrained outside the vehicle. And the defendant was upset and did not, he refused to answer whether he had weapons, and it was obvious case of whether the police have objectively reasonable safety concerns under these circumstances. And so under the Meyer case, there is a weighty interest in officer safety, particularly in the dangerous circumstances of a traffic stop. And here, the incremental intrusion on the defendant to leave the bag in the vehicle is de minimis. Is it a problem that, I think it was Vickery, asked defendant if he had any weapons and defendant just ignored him? I think it was the trial court commented on that, right? Said something like that might not have been best practice. Well, the idea that if the defendant is not wanting to answer a question of whether he has weapons, it might be more reasonable for the officers to assume he does have a weapon and the bag would be a perfect place to have it. So, I mean, the officers could make reasonable inferences from that particular fact. But in this situation, the defendants, I think, cases dealing with women's purses. The issue is the difference between Hufton, which deals with probable cause search of a vehicle as an exception to the warrant requirement. The police may expect belongings in the vehicle. De Re is the sort of idea that the police cannot search the clothing or the person because they have a heightened privacy interest in their person and their clothing. So, the sole exception to Hufton is a person in their clothing. I think the cases, especially when you get to Justice Breyer's concurrence, is sort of the idea that maybe a women's purse is akin to their outer clothing. I know a lot of women's clothes don't have pockets. Women typically then have to carry a purse where a man can keep their wallet in a billfold, for example. So, it's definitely that a police can't reach into a man's pocket and grab his wallet. But a woman who has to carry a purse or does carry a purse because she's a woman, that might be seen as more akin to her actual part of her clothing. So, that sort of reaches in from not just being a belonging in the car, any generic belonging, but actually a part of their person for the purposes of De Re. So, is that the critical distinction here in your view, what it was that defendant had? If it had been a purse instead of a backpack, would the case's defense counsel have cited control? That would at least be a much closer question that the defendant would have the authority of the cases if he were a woman and he had a woman's purse and they were asking to leave the purse behind when the defendant wants to take it with him. If that was the facts, then yes, it would be a much closer case in terms of the heightened privacy interests that apply to a woman's purse as being at least arguably part of their person, part of their outer clothing is the arguments that are some of the analysis that are made in the cases. So, that does not apply here. This is just a bag. And so, I don't think there's any heightened privacy interests that might apply that makes it akin to outer clothing. And so, the De Re exception for prohibiting the search of a person as part of a probable cause search of the vehicle, that doesn't apply. So, the Huffton's sole exception doesn't apply. So, it is a proper, once probable cause is determined very early into the inventory search, the police have the ability to inspect the belongings under the Huffton case. With respect to defendants, I believe says the police can't require the defendant to leave the bag in the car as part of an inventory search. If that were the only concern, he may have a good point on that. I'm not sure if that's correct, but it's not necessary to decide that question because here there was an obvious issue of officer safety. So, that was totally justifies what the police did in that regard. As a defendant's language at the beginning of this argument, I believe he says that the police used a guise of an inventory search as a Fourth Amendment workaround. That's not what happens here. But to the extent that he's sort of making an implicit challenge to the credibility of the officers, the officer's credibility was implicitly upheld by the trial court's ruling. The defendant would have to show that somehow the trial court's ruling was against the manifest way of the evidence. Reviewing courts are very loath to reverse trial courts on credibility determinations. So, to think that there may be a situation in another case where officers, in fact, use a pretext of an inventory search as a guise of getting around the Fourth Amendment to conduct some sort of search without probable cause, that's not what happens here. So, it's not a situation where that language is warranted by the record. They do start a valid inventory search, and there's no authority the defendant cites that says that police, that the failure to complete what at least is a valid inventory search from the beginning somehow retroactively negates the justification at the beginning and makes the inventory search itself invalid from the beginning. When it was valid at the beginning, that somehow the failure to complete it creates some sort of retroactive negation of that. There's no authority for that. And also, the defendant does not explain why police cannot make a cursory search of the car as part of their beginning the inventory search to say, okay, let's just open the car and see what's in here to get in a sense of how much properties in the vehicle they perhaps don't even know until they at least start taking a look and decide how much of a significant, how much time it's going to take. Because maybe the defendants and the driver standing outside the vehicle, and it's like, if this is going to take a long time, then maybe we need to do something to let them just stand outside for however long this is going to take. And so, I think a cursory search at the beginning of a inventory search is kind of important for the officers to gauge exactly how long this endeavor is going to take, especially when you've got people... Let's assume that everyone agrees that this was initiated as a proper inventory search. Does it matter what the state of mind of the officers was? Does it matter what their intention was? Does it matter at all? As long as the inventory search began in a proper fashion. I do not believe that it matters because until like pretextual searches are invalid under the Fourth Amendment, as far as I know that presexual, like the officer's subjective motivation is not relevant. So, if this was objectively reasonably an inventory search under the facts, if they had a policy, if they had a purpose of engaging in an inventory search, if they secretly are hoping to find drugs, it's like it doesn't really matter. Or if they wonder if maybe the so let's start the inventory search and then hopefully get probable cause to open the bag. It doesn't really matter what the officers are thinking here. What they did was objectively reasonable that satisfies the Fourth Amendment. But just to finish my point is that it's like it's important for the officers to gauge exactly how long this inventory search is going to take. When you have two people standing outside the vehicle unrestrained, the officers might say, oh, is this going to take five minutes, 10 minutes, an hour? They need to know how much in the vehicle that needs to be inventory. So, kind of a cursory search at the beginning makes sort of a lot of sense just to determine exactly, you know, from their perspective, how long are we going to need to do this when you have occupants unrestrained out the vehicle. So, for those reasons, the state would request this court to affirm the judgment. And thank you, your honors. Thank you, counsel. Counselor, free the appellant for rebuttal. Your honors, the state focuses on the incremental intrusion into the privacy of the passenger in leaving the bag in the car and also cites to Houghton after the methamphetamine was discovered. Your honors, after the methamphetamine was discovered, the officers still could not have searched Mr. Wallace's bag had it been outside of the vehicle at that time, had Officer Jacari not ordered Mr. Wallace to leave the bag in the car. This is because Houghton clearly states that once they have probable cause, they may search passengers' belongings that are found in the car. This is a key distinction because in Houghton, when they saw the syringe and the driver admitted to using it to do drugs, the passenger was still in the backseat with the purse. So, the purse was still in the car when officers developed that probable cause to search the car. In this case, when probable cause would have been developed, the bag was not in the car. So, according to the language in Houghton, the bag could not have been searched because it would not have been a passenger's belonging in the car. In its brief, the state also cites to State v. Easterday out of Idaho as support for this point. Easterday involved an entirely different scenario in which the occupant was inside the car during a drug sniff and the dog alerted to the vehicle. So, once again, the bag was inside the car when there was probable cause developed. Accordingly, given the position of the bag when probable cause would have been developed, the officers could not have searched the bag according to Houghton and the state's additional authority. Your Honors, in this case, even if you do not accept that the inventory search was invalid, the point remains that the officer could not order Mr. Wallace to leave his bag in the car. Upon ordering Mr. Wallace to leave his bag in the car, the officer placed the bag into the very spot which was to be searched. And that is not a necessary incremental intrusion for officer safety. An incremental intrusion could have been to have the bag placed elsewhere that was not going to be the spot that was searched. But didn't that assist in the inventory search? I mean, the purpose of an inventory search is in part to make sure that the occupant's personal belongings that are in the car are identified and preserved. They're protected, right? So, you know, if you let somebody, you know, just start taking things out of the car, there's no way that the police, after the fact, can prove what was in the car. The inventory basically becomes nullified because you've got people taking things out of the car. Your Honor, had Mr. Wallace been able to take the bag with him, it would not have been in the car when the car was impounded. Thus, the purpose of the inventory search is to protect the passenger's property or the owner's property that is in the car when it is impounded and protect the police from liability for that property. If the property was never going to be in the car when it was impounded, then that property is not the property that an inventory search seeks to protect. Your Honors, if upheld, the search in this case would allow officers who lack the requisite cause to utilize inventory searches to order all occupants and their belongings to stay in the car during the inventory search, and thus they could search items that they would not otherwise have legal access to. The protections of the Fourth Amendment cannot be left vulnerable to such a loophole. We ask that you prevent such an outcome and reverse the order denying the motion to suppress and ultimately reverse outright Mr. Wallace's conviction. Thank you. Thank you, counsel. We appreciate your arguments. The court will take this matter under advisement. The court stands in recess.